Case number 12-13-5286. Sharif Mobley, Appellant v. Central Intelligence Agency et al. Mr. McClanahan for the Appellant, Mr. Byron for the Appellees. The Your Honors, may it please the Court, my name is Kel McClanahan. I'm here on behalf of Sharif Mobley. And this case is very factually complicated, but relatively legally simple in our view. And so rather than go into any great detail over what has been written in all of the briefs on both sides, I'm going to attempt to sort of summarize it in the first principles, so that I can address anything that the Court might be interested in asking more about. There's four main issues here. The first issue is whether or not the FBI conducted an adequate search for records when it only searched one file system which it claimed was comprehensive, even though its own testimony in numerous other cases listed a laundry list of ways in which it was not comprehensive. And if it can refuse to search other locations solely based on the fact that it searched the one system, the CRS, the Central Records System, really well. That's the argument they're making. That's the argument that the District Court accepted. And we don't believe that that's consistent with any of the case law, let alone good public policy. The second issue that we're going to discuss is an issue of waiver, the idea that both the FBI and the CIA in their own way waived their rights to invoke certain exemptions. The FBI waived its right to invoke an exemption regarding one document at least, which was, as far as the record shows, appears to have been officially released to the Yemeni government and yet is being withheld here by the FBI. And when we introduced that information, the FBI claimed that it had no record documenting this release, but we later found out that the reason they had no record documenting the release was that they never actually looked for records documenting the release, as showed in a FOIA response they made to actually me in my own lawsuit for records about the investigation, at which point they came back and said there's no responsive records. We have no records about even looking to find out if this was officially released. We don't think they can just conclusively claim that something was not an officially documented release because they can find their documentation after not looking for any documentation about the release. The waiver on behalf of the CIA was, as everyone admits, an inadvertent waiver. The CIA accidentally confirmed that it had records about Sharif Mowgli. It then backtracked and said, oh, that was an error. We meant to say we will not confirm or deny that we had any records about Sharif Mowgli. But in order to make the first mistake, they would have to have done so many things wrong that it just beggars belief and it runs up against the presumption of agency regularity. They would have to have first stated in two different cases that they found records, then stated that all of those records were exempt under two different exemptions, one of which required checking to make sure it was properly classified. Third, then said that there was nothing segregable in any of those records in two different cases. That's what a FOIA officer who bears a duty and a responsibility to properly segregate by line-by-line review responsive records and not claim exemptions except when they are absolutely appropriate would have to have made all of those mistakes. And the director of the FOIA office would have to have signed off on both letters claiming all of this. Instead, they would have you believe, and they had the district court believe, that it was an accident. We really meant to say we couldn't find anything. No, we really meant to say that we wouldn't look or confirm that we couldn't find anything. So there's nothing to see here. Please give us deference. And the court gave them deference. The third issue pertains to the Privacy Act. And the Privacy Act, because these were for records about Sharif Mowgli, as Martin says, when you have a record that is being processed under both FOIA and Privacy Act, it has to be exempt under both. Well, the FBI said it did not have to release anything under the Privacy Act because the CRS in its entirety was exempt under the Privacy Act because the FBI did law enforcement. Well, this is completely at odds with this court's law, the court's controlling law. And that's the Doe case, I believe. Hold on. I may have misconstrued the two cases. I'm forgetting something, and I do not know what I'm forgetting, and I apologize for that. Can I take you back with a little bit of a break? Can I take you back to the initial argument, which is that the FBI search of CRS was inadequate? Yes. So suppose that we just put to one side, and I know that you have an argument to the contrary, but suppose that we put to one side anything we discover in any other case, anything that comes out of any other case about the scope of the CRS. Based on what we know in this case, in the affidavits that were filed in this case, what's your argument as to why the search of CRS was inadequate, given that what CRS professes to do is to supply law enforcement investigators themselves with tools for accessing records that are germane to a particular case? This is the Hamden argument that the government just filed a notice of supplemental authority last week. The idea that the CRS would not be a very effective law enforcement tool if it were not completely indexed. Right. Well, number one, I would argue that whether or not an agency is properly doing one aspect of its job has absolutely nothing to do with whether or not something is properly indexed for the purposes of FOIA. It's already bad enough that... Well, it can't be right. I mean, it might be right, but what would be inadequate about this? In other words, this is the tool that FBI, that law enforcement investigators do use to gain records about a particular subject matter. I mean, you might be right in the abstract that just because something serves one purpose doesn't serve another purpose necessarily, but what is it about the serving of the law enforcement purposes that would lead us to believe that it's inadequate for purposes of FOIA? A couple reasons. Number one, and again, I cannot state enough that I think that you cannot ignore the testimony in the court records of how inadequate CRS is, period. But leaving that aside, these requests specifically indicated where records were likely to be located. And when the request itself did not because, honestly, the requester at the time didn't know that or his lawyer in the U.K. didn't know that. Once I came on the case and I did more research, I sent these emails saying, based on everything that I have found, here are the locations these records are likely to be. And in the case of the Baltimore office, here's a news article where your Baltimore office stated that it had files on Mobley because it was investigating him. The agency then said, we don't have to do anything you want. We don't have to search anywhere you want because it's up to us to decide what is reasonable. However, this is where their argument breaks down, and honestly, with due respect to Judge Howell, her argument breaks down. We don't have to follow your instructions to search email systems, but we don't have to search email systems because you didn't specifically ask us to. So can I ask you this then? From your understanding, CRS, does it include emails? CRS includes some emails, but am I allowed to refer to other cases for this answer? Oh, just as a factual answer. So, yes. CRS, by the testimony given in other cases, CRS contains pertinent emails. CRS does not contain all emails. Even ignoring the testimony in other cases, we know that CRS does not contain all emails from my own case that I alluded to before where they searched the Washington Field Office email systems and found 26 pages of emails that were not in CRS. So in the Crisman case, the agency said, we don't search the CRS. CRS is what contains all the pertinent emails. And this is a recurring theme for things like shared drives. The shared drive argument in one of the other cases, they said, we don't search shared drives because those are records that aren't indexed. Those are records that are transitory. Those are records that people can edit. None of these statements means those are not agency records responsive to FOIA. And yet in this case, they say, oh, we didn't deem that the shared drives would have anything. Well, that's belied by their position in other cases. So is your understanding of the record that this is not an instance in which the FBI was saying it had already completed its search and then learned of these additional places where documents might be located according to your emails? Your Honor, that's a complicated question because we don't know when they completed their search. I argued many times that they needed to say when they completed the search so the judge could decide if they had completed it at the time they got these leads to follow. The evidence suggests that they had not completed the search at the very least when I sent the emails to them pointing out specific locations because they were still conducting it a week later and did not make a release until a year – oh, sorry, they were still conducting it a week earlier and did not make a release until – Point to the affidavit, at least the first affidavit. In paragraph 23, it says on September 22, 2011, I assume you agree with the date, plan to inform the FBI by email that would like the FBI to include the FBI in Baltimore and FBI Washington field office. And then on May 4, 2012, several months later, the FBI sent plaintiff a release of documents. Right, and we don't know – we also know, however, that based on another affidavit that a week earlier and allow me to find – it's 17 August, 2011, letter said, we are searching the indices to our CRS. So on August 17, 2011, they were searching. The email that – the first email I sent to them was on August 23rd, a week later. The second email I sent to them was on August 29th, and the third one was in September. And they didn't tell me anything about their search until almost a year later. So the question of when they found out about it is up in the air – when they completed their search is up in the air. They never said it despite my pleas to the district court to make them say. On a separate issue, they make the same argument about whether or not they have to follow the leads in the State Department records that were released that were copies of emails exchanged with FBI, which were not in the CRS clearly because they weren't released by CRS. They say there's no evidence – our plaintiff has provided no evidence that we received any word of this information before we completed our search. But we're not going to tell you whether or not we completed our search when we found it. All we can say is we had completed it by the time they were released to him. And that's a burden issue that I honestly maintain. Once we show that there is a question, the court should not have found that there was no genuine issue of material fact as to whether or not they had completed their search before they found out the information in the State Department records. And I see that my time is about up. I'm going to lose my rebuttal if I keep going. All right. We'll give you some time. Because I want to ask the government a couple of questions that I haven't asked you, and I want to get your response. Okay. In that case, Your Honor, I will hit the other main points when I come back up after they have finished. Well, your other main points are those that you've outlined in your brief. Oh, yes, ma'am. I've covered everything in the brief. The only thing that I would draw your attention to is something that I'm not sure to what degree I can talk about it today. But today, this morning, last night technically, I did file a Rule 60B motion with the district court where I found a document that did say that classification authority was not delegable. All right. And so if I'm allowed to talk about that, I'll be happy to talk about that. If not, we can just wait for the district court. All right. Thank you. May it please the Court, Thomas Byron from the Justice Department for the defendant in this case. The plaintiff's principal argument is that- Could I just interrupt and take you to your brief, the statement of jurisdiction? Yes, Judge Rogers. What is the government's position on jurisdiction? Your Honor, our position is that there are some questions raised by some unusual aspects of the materials that we were obliged to point to in our jurisdictional statement. And would you like to help the court answer those questions? I'd be happy to discuss them with your Honor. We don't have a firm position that this case must be dismissed for lack of jurisdiction, but we do think that we had an obligation to point those out to the court. Well, I can only speak for myself, but I would hope the government would try to help the court answer the questions. Certainly, Your Honor. All right. So, looking at the timetable here, as I understand part of this argument, it's that when the district court granted summary judgment initially as to the Justice Department- Yes, Your Honor. but then also decided that a remand was necessary as to the CIA, that the time for filing an appeal of that grant of summary judgment in case number 2073 started to run. I think that's right, Judge Rogers. February 7, 2013 was the date of final judgment. As to the Department of Defense and the Justice Department. That's right, Your Honor. Those are the defendants in 2073. So then, on February 26th, there's a grant of the plaintiff's motion for a stay. That's right, Your Honor. Did the government oppose that? My recollection, Your Honor, is that we did not oppose the stay. We did oppose the earlier motion a few days before, seeking consolidation at that point. But I would have to check to confirm because I might not be recalling correctly. Well, this all has to do with jurisdiction. All right. So, then, judgment is granted for the CIA on June 7. That's right, Your Honor. In fact, for CIA and the State Department in that earlier case. Now, there are no issues presently before the court concerning the State Department. Then, on the 11th, the district court consolidates the two cases. Yes. Then, on the 17th, the plaintiff files a motion for reconsideration under 59E and 60B, and the government does oppose that motion. That's right, Your Honor. As on timely? That's right, Your Honor. Yes. Among other reasons. I'm just on jurisdiction here. Of course. So, then, the court denies reconsideration and addresses three issues. The FBI search, the DIA database, and the lack of in-camera review. Yes, Your Honor. To be clear, if I may, on the first issue, it wasn't all of the issues earlier raised concerning FBI's search adequacy. Only the email systems in the reconsideration work. Okay. And in the second issue, whether the DIA's database is a Privacy Act system of records was the specific question addressed there. But the motion for reconsideration was broader than that. But the district court chose to address those three issues in denying the Rule 59E motion. So, my only point is, do we have jurisdiction with respect to these FBI issues? I think there is a fair argument that the court does not have jurisdiction for the reasons we outlined both in our brief and in our opposition to the motion for reconsideration. Where in your brief have you outlined these? I'm on page 4 of your brief. Yes, Your Honor. Pages 3 to 4 is where we outlined the concerns. You outlined concerns. And my question was, what is the government's position? Is the government's position that the court has jurisdiction to consider these FBI issues or not? We think there are substantial questions. I know you think there are questions. And I'm happy to investigate them further. So, the government has no position? We don't think it's clear that the court lacks jurisdiction. We do think there are questions about that, Your Honor. Yes. And I'd be happy to address them in greater detail if you'd like. So, specifically the concern here in the first instance. Well, I'm thinking now about the government had full opportunity to present its jurisdictional arguments in its brief. And in fairness to the other side, only put what's on page 3 and 4. And trying to parse exactly what the government's position was, particularly in light of footnote 2, was not an easy job. So, in the reply brief, appellant makes an effort to respond, but it doesn't get to the questions I'm raising now. As to whether that Rule 59e motion was too late to toll the time to appeal the grant of judgment as to the FBI or as to the Department of Justice and the Department of Defense. That's right. I think we did lay out the two aspects of the question that we think are substantial. So, is the government saying it has no position because it failed to object to the stay? No, Your Honor. Well, the 11th Circuit, as you know, presumably, well, you may not know, said the government forfeited this argument because it didn't object to the motion for the stay. So, any timeliness argument about the Rule 59e had been forfeited. I don't think the district court reached that conclusion in this case, Your Honor. The district court addressed our timeliness objection to the reconsideration motion. I know, but jurisdiction is a question of our jurisdiction here. Yes, Your Honor, that's right. And we preserved that question in the district court, but, of course, the district court's jurisdiction is not something that's waivable in any event. And we flagged it for the court to consider those issues. So, first of all, the issue, of course, is whether the district court's stay had the effect of tolling the time. That's an unsettled question when we were unable to find any dispositive authority concerning it. Secondly, the question is even if it were to toll the time to file a motion for reconsideration or for appeal. What about Rule 6d? That's not even mentioned in your brief. Rule 6d, Your Honor. B as in boy. B of the Federal Rules of Civil Procedure, Your Honor. Yeah, that talks about 59e is one of those motions where you can't extend the time. Right, we did raise that as an argument opposing the timeliness of the motion for reconsideration in district court, Your Honor. But decided not to mention it to us? I mean, seriously, counsel, I was just surprised by the government's brief. There's some serious questions here, and we don't have any guidance. We think there are serious questions. We think that we have flagged those questions for the court, and we'd be happy to address them further if the court has specific questions about them, Your Honor. You agree you had a full opportunity to address them in your brief, and you chose to address them as you did on pages 3 and 4. That's exactly right, Your Honor. All right. Yes, Judge Srinivasan, you had a quick question? Well, so if pre-Bowles, before the Supreme Court's decision in Bowles, was there an argument to be made that jurisdiction was lacking? Because pre-Bowles, there was a stay in effect. And if the stay's in effect, then that gives the litigant a reliance interest in assuming that they could file a Rule 59e motion when they did. It might give the plaintiffs a reliance interest, Your Honor. I'm not sure it would suffice even pre-Bowles to establish the court's jurisdiction. But, of course, after the Supreme Court's decision in that case, I think it's quite clear that a reliance interest by itself would not suffice. The difficult question here is, even if there were such a reliance interest, of course, how does one calculate the time? And the district court post hoc determined that it would calculate the stay, including both the first and last days, which is an unusual way to do so, as we pointed out. Not clearly precluded, which, Judge Rogers, I think is one of the reasons we did not argue that the court lacks jurisdiction, but only that there are unusual circumstances presented by this case with respect to the court's jurisdiction. Are some of those unusual circumstances the fact that the plaintiff moved to consolidate? And had consolidation been granted early on, then this timing problem presumably would disappear? I'm not sure it would have, Judge Rogers. It might have, but it's not clear that it would have. For example, consolidation of cases in the district court does not always – I'm sorry, I'm not recalling the name of the case that establishes this. There's a Supreme Court case, however, that addresses this question and makes clear that consolidation does not render them a single case. It merely renders them combined for processing procedural purposes. So it's not clear that it would have – consolidation alone would have solved the problem for plaintiffs, Your Honor. So once that judgment was entered on February 7th, with regard to – Justice and defense, Your Honor. Yeah, I mean the FBI. That's the key here. That's right. And DIA. And then the time for appeal ran unless the Rule 59e motion was timely filed. Yes, Your Honor, that's right. And given Rule 6b. And FRAT 4, Your Honor, as well. And FRAT 4. But 6b is the one that talks about 59e specifically. Right. But I wasn't clear in your footnote 2. You were suggesting that maybe Rule 6 doesn't even apply? Well, Your Honor, Rule 6 calculation of the period of time. In other words, whether the court should have counted the first day of the stay for purposes of calculating the days that by its own approach were excluded. It's not clear that it would have applied. And we felt obliged to point out that there are fair arguments on both sides of that question. Because even though it is a term of days, it's not one stated in days or a longer unit of time. Instead, it was set forth as an open-ended matter in the court's stay order. So help me here, Mr. Byron. Why would it not be in the interest of the government to take a position here? Your Honor, we don't want necessarily to preclude district courts from having the flexibility to manage their dockets appropriately. We think there are some questions about the extent to which a district court can do that. I think if I were advising trial counsel, if we were considering a circumstance where we were on the other side in a case like this, I think the prudent thing to do would have been to file a notice of appeal or a Rule 59e motion on a timely basis, assuming the state did not hold that time. The plaintiffs here took a risk. We felt we were obliged to point out that that risk entails potential consequences for this court's jurisdiction. There's no statutory basis for the 59e-6b rule, right? I think that's right, Judge. That's why I asked the question about pre-bowls. In pre-bowls, you thought there was no argument. I know you think there might have been. I think there might have been. But let's assume there wasn't. In post-bowls, if you assume that bowls apply to circumstances in which there's a statutory backing for the rule, there is no statutory backing for the rule promulgated by 59e-6b, and therefore there would still be an opportunity to give effect to the pre-bowls, understanding that because of the stay, the time wasn't backed up. I think that's an argument that is available to the plaintiffs, Your Honor. I don't understand them to have made that argument. But fair enough. Judge Rogers, I understand your point that these issues have not been fully fleshed out and I'm not objecting to the court's consideration of those concerns in any manner. I will say, Judge Srinivasan and Judge Rogers, you both asked whether, I think your question implied, whether the government opposed the stay motion in district court, and I would need to check the docket and the record to be sure I recall correctly about the answer to that. So that said, I would like to address plaintiff's principal argument, which concerns the adequacy of the FBI's search. I looked for an objection, but I couldn't find it. It doesn't mean it's not there. Very good. But if you find it, it would be helpful to let the court know. Certainly, Your Honor. I'll make a note. So can I ask you on the adequacy of the FBI search? So the argument being made is that the CRS database may be well insufficient for some purposes, but then you got specific notice to search specific field offices because of some other information that came to light, and yet there was no effort made, or at least there's no explanation, let me put it this way, there's no explanation in the affidavit as to why those field offices weren't searched. Judge Cernovasti, I don't think that's an accurate or complete assessment of plaintiff's argument in the record in this case. So let me see if I can address the parts of it sequentially. First of all, with respect to field offices, plaintiffs only requested, not in their initial FOIA request, of course, but in the subsequent email about it a year later, that the Baltimore field office should be searched. So focus on that. They did so only on the basis of media reporting concerning a statement by the Baltimore field office FBI spokesman. Right. And that concerned, I see my time's expired, so I'll finish answering your question, Your Honor. And I believe, actually, that the district court addressed that question on the basis not just of the declarations in the Vaughn Index, but also with respect to the arguments before the court in that case, in the case below, and made clear that the mere reference in media reporting is not, by itself, a sufficient kind of lead along the lines that this court in Kowalczyk was identifying that would compel the agency to conduct additional searches beyond what it reasonably determined were adequate to identify all responsive documents. So looking at this from the perspective of what FOIA requires, the obligation is on the agency to assess. Remember, the agency is most familiar with its own record-keeping systems, is most familiar with the sources of where responsive records are likely to be located. So the obligation is on the agency to demonstrate that it conducted a search reasonably calculated to identify all responsive documents. The district court here correctly concluded the FBI had done so by explaining why the CRS and the electronic surveillance indices were the likely source of all responsive documents, and nothing in the FBI's search created the kind of extraordinary circumstance, the rare circumstance, I think this court said in that case, that would constitute the kind of lead the agency could not ignore, could not in good faith ignore. Plaintiffs here... So suppose that it's apparently the news report comes from the FBI itself. So suppose that we just take as a given that the Baltimore Field Office in fact was conducting the search. In fact was... In fact was conducting the investigation. Sorry, the investigation. Then the question is, what in the affidavit tells me why the FBI wouldn't look at the documents that were in the possession of the Baltimore Field Office? First of all, Judge Trinovason, I think that part of the answer is, if the FBI Field Office were conducting an investigation, that the records concerning that investigation would be found in the CRS and the electronic surveillance index. That's the nature, as the colloquy between plaintiffs' counsel and Your Honor reflected, that's the nature of those systems. And that's why those systems exist. Beyond that, I think I can only... And where's the best place I can look in the affidavits to show me that? Your Honor, in the... There are two declarations, I think, from Dennis Argel, reflecting the FBI's search. And if I may... There is a description of the CRS in the Argel Declaration, in the first Argel Declaration. And I would be... It would take me just a moment to find the page number, but not long because... So if you look at JA-205? Yes. So paragraph 25 says... Maybe this is what you're referring to me, referring us to, but if there's something more, I'd like to hear it. On paragraph 25 on page 205, which is page 6 of the declaration... That's right. It says, certain records in the CRS are maintained at FBI HQ. Records that are pertinent to specific field offices of the FBI are maintained in those field offices. Although CRS is primarily designed to serve as an investigative tool,  Yes, Your Honor. So the way to understand that is not to suggest that there are different CRSs in each field office and headquarters, but that the CRS reflects records maintained in different locations and that a search of the CRS using the ACS, the automatic case system, I think it's called, support system, is a way of identifying where those records are and what the records are as well. So it is not accurate to the extent plaintiffs might suggest that there's a limitation on the CRS such that it only includes, for example, headquarters documents, or that there are different searches of CRS in light of the ACS. Now remember, this is a very different circumstance than where we were 20 years ago when some other CRS cases were being decided by this Court. When there were separate searches that needed to be done in each field office in order to identify even what was in the CRS. But with the automation reflected in ACS, which is described elsewhere in, I think, the following pages of the article declaration, that automation allows a search of the CRS that includes both CRS records that reflect both headquarters and field offices. So is that your main practical response, not a legal response, but a practical response to the reliance on the perceived inadequacies of CRS made manifest in other cases that the CRS has come a long ways since then? Well, first of all, Your Honor, to the extent there are inadequacies reflected in older cases, some of those have been addressed by the ACS, which the article declaration does explain. Now plaintiffs seek to introduce what they perceive to be inadequacies that they infer from other current litigation. And I don't think this is inappropriate because I don't think they have standing in this case, for example, to bring forward complaints about how other case searches were handled. But to the extent that the Court's interested in specific questions that the plaintiff's brief brings forward, we'd be happy to address that. But again, I don't think they're properly part of the record. Well, just as far as that they would suggest that a search of CRS actually doesn't uncover all documents that are germane to a particular request. Well, Your Honor, cases like Kowalczyk and others make clear that, and Miropol, for example, make clear that the adequacy of search is necessarily a fact-specific question. It turns on the nature of the request itself. And so it has to be assessed based on the particular Vaughan explanations and in light of the particular request. Now, that request is the request that plaintiffs submitted that led to this case, not plaintiffs' counsel's subsequent e-mail. And that's the important thing that I think we want to address in today's argument, in this appeal. Because the plaintiffs seek to contend, the plaintiffs contend, rather, that a requester, a FOIA requester, can dictate the nature, the parameters, of a search that the agency conducts. But that's not what the case law says, and the district court promptly rejected that. Now, I think what you're asking about is whether, if in a different case, there is an indication that the FBI should go beyond a search of the CRS alone, that requires the agency to do so in every case. And the answer to that, I think, is clearly no. That reflects the fact-specific nature. In this case, there is no reason to doubt the adequacy of the search that the FBI did conduct. And that's why we think all of these questions about searches conducted in other cases, about other requests, are simply irrelevant to the question before this court here. I'm sorry if I misunderstood your question, Your Honor. I'd be happy to take another. Okay, thank you. If the court has no further questions, we think that the district court here correctly granted summary judgment for the government agencies, and we urge the court to affirm them. Could I just ask a couple of questions then? Certainly. So, is it the Kowalski, and I may mispronounce it, but a Kowalski, you think, does not require that the government indicate either A, that the leads that the requester gave came after the agency had completed its search, or B, that what the agency did, because of the comprehensive post-automation nature of the indices it did look at, that there is no obligation on the agency to consider these other specific, I'll put leads in quotes. I appreciate Judge Rogers putting leads in quotes, because that was my first concern about the question, the way you initially phrased it. These are not leads when plaintiff seeks to dictate the parameters of a search. What Kowalski was talking about in terms of leads is what the court called the rare circumstance, where an agency's search that it initially believes to be adequate and reasonable turns out, when you look at the documents themselves, to make clear that there's something missing, that the agency cannot in good faith ignore it. That's not what happened here. And so the first part of your question, Your Honor, is whether plaintiff's counsel's email came after the end of the search. And frankly, Your Honor, I would need to look back at the timeline more carefully to know the answer to that question. But I think it doesn't matter, because in the end, the kind of effort by plaintiff's counsel to dictate the parameters of the search is not at all what this court in Kowalski, or in any other case, mere Paul and the others we cited in our brief, had in mind when it said that an agency may in the rare circumstance not in good faith be able to ignore certain kinds of leads. The court was not opening the door, and it made very clear that the normal circumstance for a plaintiff, for a requester, I should say, for a FOIA requester who sees information, whether in the agency's own request, or in the agency's own response, in another agency's response, in the media, in the newspaper reporting about the spokesperson's statement, or elsewhere, the proper courses for the requester to make a subsequent FOIA request. And there are very good reasons for that. There is a long line. The FBI alone receives, I think, some 20,000 FOIA requests a year. So what specifically should the plaintiff here have done? Instead of sending an email seeking to dictate the terms of what the plaintiff thought was an ongoing search and may in fact have been completed, he should have submitted a new FOIA request and asked for information about, for example, the media reports about the FBI spokesperson's statement, or, for example, information that he thought was missing from the search that was ongoing. And maybe he would have needed to do more than one to the extent he had additional information that he received on an ongoing basis. So where the government acknowledges that with automation and the comprehensive nature of the indices it searched, it has made judgments as to what is in that comprehensive system. Of course. The argument in part, as I understood it, is that there is reason to believe, and you will object about standing, but just take the hypothetical, there is reason to believe that there may be, for example, emails elsewhere that, for reasons that the agency recounts, namely they're subject to change, they aren't deemed adequately significant enough for law enforcement purposes to be included in this comprehensive system. Would that be enough as a lead? No, Your Honor. First of all... It has to be a lead in the actual document that is released? Yes, in the documents that are responsive to the initial search. If the agency has reason to believe that there's a lead in there that... I get that one, but what I'm... I'm trying to give this to you as a hypothetical so you won't see yourself as giving anything away, but all I'm getting at is that the agency says we have a comprehensive system, that we have defined to have ten parts, that there are other parts, 12, 13, 14, that we have not included because we have decided they are not significant for law enforcement purposes, which is the nature of the index we're talking about. How does a person have to file another FOIA request saying, look for emails that are not in your comprehensive system? No, Judge Rogers, I don't think actually that a FOIA requester is entitled to dictate the parameters of the search in the way the plaintiff's counsel's email sought to do. That's what I thought you were going to tell me, even in that situation. Even in the terms of a FOIA request, as I think your hypothetical suggests. That's right. That's right, exactly. So there's no way to get an agency to search files 12, 13, and 14? I don't think that's right, Judge Rogers. First of all, the FBI does search, for example, email systems, field office locations, and other kinds of searches. But you understood the terms of my hypothetical that's on the question. That's what I need to be clear about. No, I understand, Your Honor, but I think I need to address your hypothetical in terms of the way the FBI actually does conduct searches in the real world. My hypothetical is the FBI has made a judgment that ten things are going to be useful for law enforcement purposes, that 12, 13, and 14 are not going to be useful. Yes, Your Honor. Is there no way to get the agency to look at 12, 13, and 14? That's all I want to know. There is a way, Your Honor. If a FOIA request seeks information that is not likely to be found in the law enforcement investigative context, then the agency will have to search beyond it. And that's what actually happens, and that's why I was trying to address your question in terms of actual responses. Plaintiff's own references to other litigation reflects that. In another case in which he is involved, the FBI has searched its email systems because it determined that that's where responsive records were likely to be located. That's the way it has to work, is that if a requester seeks records, the agency assesses where those records are likely to be found and conducts a search reasonably calculated to find them. That's what the agency did here. And remember, it was quite reasonable for the agency to focus on its investigative CRS record system because the FOIA request itself referred to FBI investigations and what the request calls interrogations, which presumably refers to interviews because the request also talks about FBI 302 forms, which are interview reports. So the FBI was reasonable in determining, well, the most likely place to find records in response to this is going to be in the CRS because that's where investigative records are, and that's what the plaintiff appeared to be seeking. In fact, I think that's what the plaintiff was. So the request said records pertaining to Sharif Mobley in the Baltimore field office. Yes, Judge Srinivasan. So there is case law that says that a requester can specify a location, including a field office, and then it would be up to the FBI to determine how to search the field office. And if, for example, and I'm imagining hypotheticals, let me posit it first, however, that there will be some circumstances in which such a request, depending on the particular parameters and specifics, will result in additional searches beyond the CRS. But I want to also point out that it's not necessarily going to be the case that the CRS will be an inadequate search even in response to that kind of request. That's the kind of fact-specific determination that must be made based on the specifics of the request, the declaration explaining the reasons for the search parameters, and we would just have to see in a particular situation. But doesn't the argument have to be that the CRS, in fact, would be adequate in that situation? Because I thought what the request was for was records pertaining to Sharif Mobley anywhere. And then the response was, well, we searched the CRS. And so if there's another request that comes in and says, you know, what I really want is records pertaining to Sharif Mobley in Baltimore, then the answer has to be, well, we already did that. Yes, Your Honor. You asked for everywhere. I think that's right. Yes. If that's the hypothetical, in other words, merely duplicating exactly what the request is here and saying only in the Baltimore field office, then yes, absolutely right. So one quick question about the subject delegation issue. Yes, Your Honor. That was raised by Appellant, and now he's filed the Rule 60B motion. Yes, Judge Rodgers. Do you just want to say what we ought to do with that? Certainly, Your Honor. So, first of all, this came in very late last night, and I've had only a very few minutes to look at it. Of course. But my understanding of the Rule 60B motion is that it would probably raise a couple of concerns for the district court. First of all, to the extent it seeks to question the judgment with respect to issues that are before this court, the district court might lack jurisdiction to address it without an indicative order of ruling. I don't see the need to do that here, however, for a couple of reasons. I mean, first of all, the district court, I think, can deny such a Rule 60B motion, even in the absence of an indicative ruling procedure where it's so clear. And I think it is quite clear here, Judge Rodgers, that this is insubstantial. The reference plaintiff makes is to a 1972 internal DOJ directive concerning a long-superseded executive order that does not include the same, based, again, just on my very quick review, it appears not to include the same kind of specific requirements that plaintiff relies on in executive order 35268 that's at issue in this case. So I think it is plainly insubstantial, and there is no reason for this court to undertake any extraordinary steps. If the court has questions about it, of course, we'd be happy to submit a supplemental briefing if that's appropriate. But, again, we don't think it's necessary. With respect to the delegation question, however, Your Honor, I think it's worth pointing out that the executive order permits and, in fact, requires that the document-by-document classification review be undertaken with the personal participation or under the direction of one of the three specified officials. The delegation order that's in the record here from Assistant Attorney General for Administration in 1999 specifies that the document-by-document review by the FBI Section Chief will be done under the direction of the Assistant Attorney General. So it tracks very specifically the language of the executive order, plainly, in our view, therefore complying with that requirement. So do you see any difference in the meaning of the language in the executive order and what was done here? No, Your Honor. We think it plainly complied with the executive order and that the delegation was... So in one, I'll get the titles mixed up, but the Executive Attorney General for Administration has to do the document-by-document review. In another, he can delegate or she can delegate that to someone else. No, Judge Rogers. I think the dichotomy you're suggesting, actually both parts of that, both alternatives, are provided for in the executive order itself when it says either with the personal participation of one of those three officials or under the direction of one of those three officials. And that under the direction of, we think, plainly permits the delegation, but in any... So he delegates it to a GS-7. I mean, I just need to be clear how far you take this. Well, in the specific circumstances of the record in this case, it was delegated to an SES official, the Section Chief at the FBI. So that's how far we take it here, Your Honor. But it's the decision of the Section Chief, then. It's not the decision of the Assistant Attorney General for Administration. I think it's correct to say it's the decision of either Mr. Hardy or Mr. Argo acting under the direction of the Assistant Attorney General for Administration. So the question is, I think, that Judge Rogers is getting at is there's an executive order that makes special provision for circumstances in which the request is post hoc. Yes. And it does use the words under the direction of, as you rightly emphasize. Yes. But everything's under the direction of somebody. Everything the government does, at least when I worked in the government, I was doing it for somebody. And so you're always acting under the direction of someone. But this has a particular procedure that specifies that we want to go through these exact sequences in order to assure that the response is bona fide. Yes, Your Honor. So it has to be, I think – well, let me ask you. Do you think that in this kind of – in this strata of cases where you're dealing with these post hoc requests and a special executive order provision kicks in, that under the direction of means something more than just that you're doing something as an official who reports to other officials, which everybody does, other than the President? Oh, I see, Your Honor. So as I understand your question, Judge Trinovasan, you're asking whether we – by what under the direction of in my interpretation and the government's interpretation here, is anything more than merely reporting to or being supervised by. Right. Yes, it is. And the way in which it is something more is that it is set out in the particular terms of the delegation order that's in the record here. So the delegation itself is not merely go forth and classify. The delegation is do as I tell you in this delegation order. And that's why it is very specific, and that's why I think it's important to recognize that the language of that delegation order under my direction tracks the language of the executive order. It does more than merely say you are operating within a hierarchical structure. Yes. And practically, what is that? Well, practically, Your Honor, first of all, it's a recognition of the expertise of Mr. Hardy and Mr. Urgell as the section chief and acting section chief in this case. They are the ones with the appropriate expertise to make these judgments. The assistant attorney general has no idea on a personal level what particular documents within the FBI are and whether they should be classified. He's not in an appropriate position. So he has, in the exercise of his authority, not just the authority specified by the executive order, but also his authority within the Justice Department as the AG for administration, he has specified the right people to make these calls, and he has said that you should make these calls using the specific requirements I'm setting forth here and making sure that on a document-by-document basis the documents satisfy the requirements of the executive order. The other thing he's done that's very important here is set forth an audit procedure that was initially conducted by SEPS, the Security Emergency Planning Staff, and was in 2008, I think, transferred to the Office of Information and Privacy, now the Office of Information Policy. That audit procedure ensures that the document-by-document processing is done under the direction. So there's something else about the delegation that leaked out to me, which maybe I'm attaching significance to something the government doesn't think is significant, because it says the chief of the document classification unit, and this is on J392, shall act under my direction, which is the operative language, and shall keep me apprised in a timely manner of any action taken under this authority. Yes, that's right, Your Honor. That's part, I think, of the audit procedure that's established. Yes. I thought that was separate. The audit procedure is a spot check. It doesn't require that every time. This says every single time, I think, shall keep me apprised in a timely manner of any action taken under the authority. Oh, I see. I'm not sure, Your Honor, what the reporting requirements are as a practical matter, and I don't want to represent one way or the other. So you may be right that it does require some greater reporting than the audit procedure, or it may be subsumed in that I'm not in a position to say, Your Honor, I don't want to represent one way or the other. But if we look at the letter of this, it just says, unless somebody, this has been superseded, shall keep me apprised in a timely manner of any action taken under this authority. Right, Your Honor. It seems like every time the delegee does something, that he or she has to keep the supervising official apprised in a timely manner, which would add some concrete teeth to the notion that they're operating under the direction of the supervising official. I presume that there is timely reporting, Your Honor. Yes. I don't know the details of that, and that's why I'm reluctant to go further. Who would have the burden? In litigation, Your Honor? Yes, where a challenge is made to a subdelegation. Well, the burden is on the government to demonstrate that a FOIA exemption applies to the particular documents. And so here the way the FBI satisfied that burden was through the Argyle Declaration, which included these attachments that explain the delegation, the direction, and reporting the whole procedure, and showed that the actions by Mr. Hardy and confirmed by Mr. Argyle were done correctly and consistent with the executive order's requirements. Is that Your Honor's question? I'm not sure if I understood. Well, I think the answer you gave me is the burden is the government's. In litigation, that's certainly right, Your Honor. Yeah. Thank you. Thank you very much. But here there's been no reason to doubt that the government satisfied that burden, and I think that's the appropriate question at this stage of the case. Thank you, Your Honor. Your Honors, I'm going to hit that last point first. I do actually have an answer to the Court's question and particularly your question. To the degree that you can consider filings in other cases, in the Chrisman case that I referenced earlier, we filed a request for all records in which the AAGA was apprised of these actions. And the response came back, there are no records. According to JMD, the AAGA has never once, that they can tell, been apprised of any actions taken under this memo. So that's something. Unfortunately, we didn't know that at the time any of this briefing happened, but it is a matter of court record in the Chrisman case that that's happened. And they're arguing that it was an adequate search and they did nothing wrong. So you can take from that what you will. Any comment on the jurisdictional point? The jurisdictional point, I avoided mentioning it in the oral arguments because I didn't want to linger too long on it. However, the only comments that I can make on that are really basic. The judge laid out the difference between an extension and a stay, and that a stay is something that's inherent to the court and an extension is something created by FRCP 6. And FRCP 4 and FRCP either 6 or 5, I can't remember which one, whichever one says you can't extend a 59E pertain to creations of FRCP 6. And they don't purport to limit the inherent power of the court to stop, as Judge Scalia said, the proceedings for an indefinite period of time, which is also supported by the government's point that the time period was not set forth in days. It wasn't set forth in anything. It was just paused. And the second issue is even taking all of that aside and ignoring all of that, the issue of whether or not the 59E was timely, if you accept that the stay was valid, the problem of it being perhaps one day late, that's, as they admit, the general practice is to not include those days unless the court says otherwise that it is doing so. And the court said otherwise that it was doing so. And so we've satisfied that test, we believe. And we don't think that the court needs to really spend too much time on it. Now, getting back to a couple of things that my colleague said that were not entirely accurate, he said that we only asked for them to search the Baltimore field office. And yet, in the record, the first email, actually the second email that was sent on August 29th, specifically says, please search all shared drives including the I drive and S drive, especially for FBI headquarters and the New Jersey and New York field offices. And to hear them tell it, well, that didn't count because we only asked for the Baltimore field office later. So the question of whether or not we're limited to Baltimore, if you find that they did have to search a field office, they should have to search those others as well. Which brings us to a point that he said in an answer to one of your two questions, and I can't remember exactly which it was, where he said if they were conducting an investigation, the CRS would be the most likely place to look for records. They went to great extremes in this case to avoid using the phrase most likely. We never said we looked in the most likely place. We looked in the only likely place. We would never say that we looked in the most likely place. Well, he just said that they looked in the most likely place. And as to whether or not it is in fact the most likely place because there was an investigation, and perhaps the only time they would have to look somewhere else is if there wasn't an investigation. In my case, the McClenahan case, they were doing an investigation. The request said this is about the investigation, and yet they looked in the Washington field office's email systems. That is the only case I have seen in numerous cases against the FBI where they have searched anywhere except CRS and occasionally the electronic surveillance. Now, I'm not saying that's the only case out there. There are several other cases. That's the only case where my requests have been involved. And ever since I started doing FOIA, I have made a laundry list in every FOIA request I file with the FBI of us, the offices that they need to search. And each and every time, with the exception of that one case, I can say please search this field office, this field office, this field office, this field office, Yemen. When there are new mobile requests out there that they respond to when we gave them 14 locations to search, with reason to believe that there were records in all of them, we searched the CRS, and we have done an adequate search. So for them to suggest that if an email to them is not sufficient to tell them to search somewhere else, a new request would be, that is patently not the practice of the FBI. And I laid this out in fairly stark terms in the brief where I can keep filing requests for records about Mobley in the following office, and they will say we searched the CRS. And then I can find new information, I can file a new request, and they will search the CRS. And each time, they will argue until they're blue in the face that they don't have to search anywhere else. And, and this is the most frustrating part of this entire argument, is the argument they make as a caveat for why they didn't search any email systems. We don't have to search anywhere but the CRS because we don't have to follow any directions that the requester gives us, and we don't have to search email systems because he didn't ask us to. And those two are not compatible. And there is a case out of the Second Circuit that they went to great lengths to try and distinguish called Halpern that said not only are records that they find, or information that they find in their own records, clear leads that they have to follow under the terms of Kowalczyk, but when they asked a requester for more information and the requester did not give them that information, they did not have to follow those leads, or they did not have to search for anything that he would have given them because he didn't give it to them. Had he given it to them, it would have been a clear lead that they would have had to have followed. All right, counsel. Yes, ma'am. I think we have the thrust of your argument here. If there's anything new you'd like to bring to the attention of the court. Just a couple points. Number one. Briefly. I'll be as brief as I can, I swear. They make a sort of throwaway argument that it would have been unduly burdensome for them to search four or five other locations. And every case that they come up with for that is a case where someone had asked them to search every field office or every office in existence or every record system. And they have not given any reason to believe that this would be an unduly burdensome search, which is the exception. All right. What else? The other point is something that I did not get to mention before, is the idea of the in-camera review. Right. Can we take your brief? Take the arguments in your brief? Yes, ma'am. I believe so. All right. Anything new? Not that I can think of, Your Honor. All right. Thank you. We will take the case under advisement. Thank you.
judges: Rogers, Brown, Srinivasan